# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON MICHAELS<br>P.O. Box 56252<br>Washington, DC 20040<br>*Plaintiff*<br><br>v.<br><br>NCO FINANCIAL SYSTEMS, INC.<br>507 Prudential Road<br>Horsham, PA 19044<br>*Defendant,*<br><br>TRANSWORLD SYSTEMS INC.<br>2235 Mercury Way Ste 275<br>Santa Rosa, CA 95407-5413<br>c/o CT CORPORATION SYSTEM<br>1015 15th St, NW<br>Washington, DC 20005<br> *Defendant*<br><br>MITCHELL RUBENSTEIN & ASSOCIATES, PC<br>12 South Summit Avenue<br>Suite 250<br>Gaithersburg, MD 20877<br>*Defendant*<br><br>DOMINION LAW ASSOCIATES PLLC<br>222 Central Park Avenue, Suite 210<br>Virginia Beach, VA 23462<br>*Defendant* | Case No: |

## COMPLAINT

Plaintiff Sharon Michaels submits her Complaint against NCO Financial Systems, Inc. ("NCO"),

Transworld Systems, Inc. ("Transworld"), Mitchell Rubenstein & Associates, P.C. ("MRA") and

Dominion Law Associates PLLC (Dominion) for unlawful debt collection practices in violation

of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692, *et seq.*, District of

Columbia Code § 28-3814, *et seq*, deceptive trade practices in violation of the Consumer Protection and Procedures Act, District of Columbia Code § 28-3901 *et seq*, abuse of process and malicious prosecution.

## INTRODUCTION

The conduct alleged here involves a system of collecting debts whose sole purpose is to harass, intimidate, and coerce. The system relies on the threat and actual application of the power of a judicial system. The power wielded by the experienced, professional collection attorney and a large national debt collector in this system is immense. Consumers who find themselves confronting this system are rarely represented by counsel, have little understanding of the practices and procedures commonly employed by experienced courtroom attorneys, and quickly find themselves outmatched and easy targets for the kind of abuses outlined in this case.

### I.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 in that the FDCPA claims involve a federal question.

2. Venue is proper under 28 U.S.C. § 1391(b)(2) in that the conduct giving rise to the claims occurred in this jurisdiction.

### II.

### PARTIES

3. Plaintiff, Sharon Michaels, is a natural person residing in the District of Columbia.

4.  Plaintiff, Sharon Michaels, is a consumer as defined in 15 U.S.C. § 1692a(3), D.C. Code §
28-3901(a)(2) and D.C. Code § 28-3814(b)(1)  in that the alleged debt at issue is a private
student loan allegedly incurred for personal, family or household purposes.

5.  Defendant, NCO, is a Pennsylvania corporation engaged in the business of collecting debts in
this state with its principal place of business located at 507 Prudential Road, Horsham, PA
19044.  Defendant is a "debt collector" as defined by D.C. Code § 28-3814(b)(3)  and 15
U.S.C. § 1692a(6) in that its principal purpose is the collection of debts using the mails and
telephone, and it regularly attempts to collect debts alleged to be due another.

6.  Defendant, NCO is a "merchant" as defined in D.C. Code § 28-3901(a)(3) as it in its ordinary
course of business does or would supply goods or services relating to consumer credit and makes
available, effectuates or provides information about a service that is part of the economic output
of society.

7.  Defendant, Transworld, is a California corporation engaged in the business of collecting debts
in this state with its principal place of business located at 2235 Mercury Way Ste 275
Santa Rosa, CA 95407-5413.  Defendant is a "debt collector" as defined by D.C. Code § 28-
3814(b)(3)  and 15 U.S.C. § 1692a(6) in that its principal purpose is the collection of debts using
the mails and telephone, and it regularly attempts to collect debts alleged to be due another.

8.  Defendant, Transworld is a "merchant" as defined in D.C. Code § 28-3901(a)(3) as it in its
ordinary course of business does or would supply goods or services relating to consumer credit
and makes available, effectuates or provides information about a service that is part of the
economic output of society.

9.  Defendant, Dominion, a Virginia PLLC, engaged in the business of collecting debts in this
state with its principal place of business located at222 Central Park Avenue, Suite 210, Virginia

Beach, VA 23462. Defendant is a "debt collector" as defined by D.C. Code § 28-3814(b)(3) and 15 U.S.C. § 1692a(6) in that its principal purpose is the collection of debts using the mails and telephone, and it regularly attempts to collect debts alleged to be due another.

10. Defendant, Dominion, is a "merchant" as defined in D.C. Code § 28-3901(a)(3) as it in its ordinary course of business does or would supply goods or services relating to consumer credit and makes available, effectuates or provides information about a service that is part of the economic output of society.

11. MRA is, and at times mentioned herein is, a professional corporation with a principal place of business at 12 South Summit Avenue, Suite 250, Gaithersburg, MD 20877. MRA is, and at all times mentioned herein, a debt collector as defined by District of Columbia Code § 28-3814(b)(3) in that it engages, directly or indirectly, in debt collection. The principal purpose of MRA, at all times relevant herein is, a debt collector as defined by 15 U.S.C. § 1692a(6) in that it primarily engaged in the business of collecting debts alleged to be owed to another.

12. Defendant, MRA, is a "merchant" as defined in D.C. Code § 28-3901(a)(3) as it in its ordinary course of business does or would supply goods or services relating to consumer credit and makes available, effectuates or provides information about a service that is part of the economic output of society.

### III

### FACTUAL ALLEGATIONS

13. From their offices around the country NCO and Transworld (collectively "Defendants") engage in consumer debt collection activities throughout the United States.

14. Defendants engage in consumer debt collection activities by hiring debt collection law firms such as MRA and Dominion (collectively "Co-Defendants).

15. Defendants regularly attempt to collect debts by contacting consumers by telephone, U.S. mail, and other instrumentalities of interstate commerce.

16. Defendants hired MRA to initiate a lawsuit, 2014 CA 001373 C, against Sharon Michaels on behalf of its alleged client the National Collegiate Student Loan Trust 2007-4 ("NCSLT") on March 7, 2014 ("NCSLT litigation").

17. Defendants provided all instructions to MRA relating to the alleged debt sought in the NCSLT litigation filed in the Superior Court.

18. MRA never had any contact with NCSLT

19. Transworld identifies itself as the servicer for the alleged debt in NCSLT litigation

20. MRA was replaced in the NCSLT litigation by Darragh Inman who also never had any direct contact with NCSLT

21. MRA filed an Original Complaint on March 7, 2014 alleging that Ms. Michaels owes NCSLT 2007-4 $22.602.95 "for various Student Loan Promissory Notes."

22. In the Original Complaint Defendant demanded judgment for "$22,602.95 with interest thereon at the rate of 5.85% from June 8, 2013 to date of judgment" and "court costs plus attorney fees of $3,390.44."

23. Prior to initiating the NCSLT litigation, MRA did not conduct any due diligence to verify the validity of the account or debt prior to initiating the lawsuit against Ms. Michaels.

24. MRA through Duane Demers swore under oath that the claims in the Original Complaint "is a just and a true statement of the amount owing by the defendant to plaintiff."

25. NCO also attached to the Original Complaint a sworn affidavit and verification where it claimed to be the "designated Custodian of Records for Plaintiff."

26. On May 20, 2014, Defendant filed and Amended Complaint in the Superior Court.

27. The Amended Complaint was the operative complaint in the NCSLT litigation

28. Defendants served process on Ms. Michaels on June 15, 2014.

29. The Amended Complaint alleged "Plaintiff, sues the Defendant(s), for the principal balance of sum of "$22,602.95, together with accrued interest in the amount of $994.21, totaling the sum of $23,597.16 as of 1/30/2014, for funds disbursed for the purpose of educational expenses pursuant to a loan agreement."

30. The Amended Complaint did not allege that Ms. Michaels owes the Plaintiff the loan as was alleged in the Original Complaint

31. The Amended Complaint did not allege that NCSLT owned the alleged debt

32. The Amended Complaint demanded judgment in the amount of "$22,602.95 plus accrued interest in the amount of $994.21 plus court costs and reasonable attorneys fees."

33. Defendants did not allege that Ms. Michaels owed NCSLT 2007-4 the amount claimed in its Amended Complaint.

34. MRA did not include a sworn affidavit with the Amended Complaint.

35. Process was served on Ms. Michaels on June 15, 2014

36. During the NCSLT litigation, Defendants, through MRA, filed a Motion for Summary Judgment on December 29, 2014 whereby it attached a group of documents that it refused to produce during discovery even though such documents were requested.

37. The documents filed in the NCSLT litigation on the deadline for dispositive motions were deceptive and misleading

38. Defendants untimely filed a Praecipe supplementing its Motion for Summary Judgment on March 17, 2015 whereby it provided an affidavit and verification of account signed by Mr. Bradley Luke of Transworld.

39.  In the March 17, 2015 affidavit Mr. Bradley Luke stated that Transworld is "the designated Custodian of Records for Plaintiff."

40.  In the NCSLT litigation, Defendants sought a judgment against Ms. Michaels

41.  Defendants identified itself as the servicer of the alleged debt in the NCSLT litigation

42.  MRA provided information regarding the alleged debt in the NCSLT litigation to Ms. Michaels

43.  Defendants employed MRA on behalf of NCSLT 2007-4

44.  Defendants managed the NCSLT litigation to its conclusion

45.  Defendants submitted deceptive documents in the Superior Court in the NCSLT litigation in an attempt to collect an alleged debt from Ms. Michaels

46.  Defendants submitted deceptive documents in the Superior Court in the NCSLT litigation in an attempt to obtain a default judgment Ms. Michaels

47.  Defendants also filed an affidavit executed by Jonathan Boyd of NCO Financial

48.  Mr. Boyd, as an employee of NCO has no personal knowledge as to the business practices, policies and procedures of the original bank, the purported original creditor with whom the account is alleged to have been opened and who would have been responsible for the initiation, maintenance and servicing of the alleged account that was the subject of the NCSLT litigation.

49.  Defendants filed the affidavits of Jonathan Boyd and Bradley Luke wherein both individuals attested to the validity and ownership of the alleged debt in the NCSLT litigation.

50.  MRA filed the affidavits of Jonathan Boyd and Bradley Luke when it knew or should have known that both lacked personal knowledge of the facts contained in such affidavits

51. NCSLT was unable to support its claim in the NCSLT litigation with basic documents, such as original contracts underlying the alleged debts or the chain of title evidencing that NCSLT had standing to sue Ms. Michaels

52. Defendants were not authorized to collect the alleged debt

53. Defendants and MRA filed deceptive documents in the NCSLT litigation in an attempt to collect an alleged debt that it was not owed.

54. Defendants were not authorized to collect attorney's fees in the NCSLT litigation.

55. On information and belief, Defendants and MRA initiated this NCSLT litigation intending to coerce a settlement against Ms. Michaels

56. On information and belief, Defendants and MRA initiated this NCSLT litigation intending to obtain a default judgment against Ms. Michaels

57. Defendants provided information regarding the alleged debt in the NCSLT litigation to Ms. Michaels

58. Defendants fees in the NCSLT litigation are dependent upon how much is collected from the alleged debtor through litigation or without litigation

59. Defendants remuneration in the NCSLT litigation is that it receives a percentage of the amount collected from the alleged debtor

60. Defendants continued the NCSLT litigation for months even after it became clear that it lacked evidentiary support for the claims asserted

61. In the NCSLT litigation, Defendants never amended its complaint to allege that Ms. Michaels owed the amount claimed to NCSLT even after Ms. Michaels objected

62. In the NCSLT litigation, Defendants never amended its complaint, even after Ms. Michaels objected that it was not the real party in interest, to allege that NCSLT was the real party in interest.

63. NCSLT never appeared in the NCSLT litigation and the only party that appeared alleging to act on behalf of NCSLT is Defendant NCO

64. NCO was not a party to the alleged agreement at issue in the NCSLT litigation

65. NCO identified itself as the servicer for the alleged debt in NCSLT litigation

66. National Collegiate Student Loan Trust 2007-4 was not a party to the alleged agreement at issue in the NCSLT litigation

67. Though Defendants were given multiple opportunities due to Ms. Michael's challenging it on standing Defendants never evidenced that it was the real party in interest in the action

68. Defendants never proved or alleged that the amount claimed in the NCSLT litigation was owed to NCSLT

69. Defendants never proved that NCSLT was the holder of the alleged promissory note or entitled to payment of the alleged note at issue in the NCSLT litigation

70. After over 20 months of litigating, Defendants voluntarily dismissed the NCSLT litigation with prejudice on November 27, 2015 because it did not want to produce its one and only witness, Ramona Franklin, for a deposition ordered by the court.

71. NCO directed and managed the NCSLT litigation

72. On multiple occasions Defendants refuse to produce its alleged client NCSLT 2007-4

73. MRA received all its orders from NCO or Transworld

74. MRA gave all its reports regarding the NCSLT litigation to NCO or Transworld

75. Mr. Inman received all his orders from NCO or Transworld

76. Mr. Inman reported to Defendants regarding the NCSLT litigation

77. Defendants paid Mr. Inman's fees

78. Any attorney fees awarded to MRA as a result of the NCSLT litigation were to be given to Defendants

79. Any attorney fees awarded and paid in the NCSLT litigation are turned over to the Defendants

80. MRA's compensation from NCO/Transworld relating to the NCSLT litigation was contingent upon the amount collected from the alleged debtor

81. MRA files lawsuits, not based on any legal determination that each lawsuit is warranted, but to coerce alleged debtors into paying up.

82. MRA's litigation practice misled Ms. Michaels that a lawyer has reviewed her alleged file and determined that the NCSLT claim validly merits litigation

83. Upon information and belief, no attorney at MRA meaningfully reviewed Ms. Michaels file prior to instigating the NCSLT litigation

84. MRA filed affidavits in the NCSLT litigation with full knowledge that the affiants had no personal knowledge of some/any of the material facts contained in such affidavits

85. MRA did not determine that the documents included with such affidavits were mere hearsay

86. MRA did not determine prior to filing the affidavits that the alleged agreement purported to be the basis of the claims asserted in the NCSLT litigation was incomplete.

87. MRA did not determine whether NCO was the custodian of records for NCSLT as claimed in one affidavit

88. Interrogatories propounded in the NCSLT litigation were sworn and verified by Bradley Luke.

89. MRA did not determine whether Transworld was the custodian of records for NCSLT as claimed in one affidavit

90. MRA failed to review the contracts governing the sale of accounts to determine whether those contracts disclaimed any warranties regarding the accuracy or validity of the alleged debt

91. MRA failed to verify the affidavits filed by it in the NCSLT litigation

92. MRA failed to verify its "Verified" original complaint filed in the NCSLT litigation

93. MRA filed an amended the original complaint and removed the allegation that the alleged debt in the NCSLT litigation was owed to NCSLT

94. Defendants received an assignment of the alleged $22.602.95 debt from NCSLT 2007-4 for collection purposes

95. Defendants and MRA's fees are dependent on collection of the alleged debt from Ms. Michaels

96. Defendants claim to be authorized by NCSLT 2007-4 to enforce collection of the alleged debt by lawsuit

97. Defendants initiated the NCSLT litigation against Ms. Michaels based on the claimed authorization it received from NCSLT 2007-4.

98. Ms. Michaels was subjected to a suit that should never have been brought as it lacked any evidentiary support.

99. During the course of the NCSLT litigation MRA filed a motion to withdraw as counsel for NCSLT

100. Defendant Transworld sent a letter to the Clerk of the Superior Court for the District of Columbia dated April 15, 2015 regarding the NCSLT litigation that was signed by employee of Transworld, Kristian Knochel

101. Mr. Kristian Knochel is not barred in the District of Columbia

102. The April 15, 2015 letter from Transworld objected to the withdrawal of MRA from the NCSLT litigation

103. The April 15, 2015 letter from Transworld also stated that Transworld "has not yet been able to arrange substitute collection counsel for the Trusts and several of the matters have immediate pending deadlines."

104. On May 14, 2015, Mr. Kristian Knochel appeared in the NCSLT court via speakerphone and represented to the court that he "objects to Attorney Demers [MRA's] Motion to Withdraw Appearance as Plaintiff's Attorney."

105. Defendants initiated the NCSLT litigation against Ms. Michaels

106. As a result of Defendants violations of the FDCPA, the DCDCL and the CPPA, Ms. Michaels suffered actual damages stemming from embarrassment, anxiety, emotional distress, fear, frustration, upset, humiliation, amongst other negative harmful emotions, in addition to the cost associated with defending an illegal collection lawsuit

107. The night before one hearing in the NCSLT litigation, Ms. Michael's was so stressed with anxiety that she was driven to urgent care

108. Defendant voluntarily dismissed the NCSLT litigation with prejudice after the Superior Court Magistrate judge ordered NCSLT's only alleged witness for trial to appear at a deposition subpoenaed by Ms. Michaels

109. Prior to Defendant's dismissal Ms. Michaels had endured over nineteen months of litigation

110. Defendants were the intermediaries between NCSLT 2007-4 and the co-defendants.

111. MRA never had any interaction with NCSLT 2007-4

112. Mr. Darragh Inman never had any interaction with NCSLT 2007-4

113. For the mediation requiring all parties to appear, Mr. Inman brought a representative from Transworld by the name of Ramona Franklin and presented Ms. Franklin as having full settlement authority.

114. Defendants never produced NCSLT 2007-4 throughout the proceedings even though the Superior court judge requested that NCSLT 2007-4 appear at two hearings

115. Transworld directed and managed the NCSLT litigation

116. Dominion sent Ms. Michaels a demand letter dated June 29, 2015 seeking to collect on the same alleged debt at issue in the NCSLT litigation

117. At the time that Dominion sent the demand letter to Ms. Michaels she was represented by counsel who was defending her in the NCSLT litigation

118. Dominion provided information regarding the alleged debt in the NCSLT litigation to Ms. Michaels

119. Dominion's June 29, 2015 letter stated the "Referred Amount" as $22,602.95 and the "Claim Amount" as $26,094.02

120. Dominion's June 29, 2015 letter identified the creditor as "National Collegiate Trust"

121. Neither Defendants nor Co-Defendants adopted any procedures to avoid violations of the consumer protection laws of the District

122. Defendants engaged in a pattern and practice of filing lawsuits and knowingly filing affidavits signed by persons that have no personal knowledge as to the matters attested to.

123. Defendants engage in a pattern or practice of producing witnesses to testify at trial regarding documents for which such witnesses have no personal knowledge

124. Defendants use virtually form affidavits in the various lawsuits filed in Superior Court where they merely insert the name of the witness.

125. The affidavits filed by Defendants and MRA allege facts that are not within the personal knowledge of Bradley Luke or Jonathan Boyd

## IV

### FIRST CLAIM FOR RELIEF

### VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT, 15 U.S.C. § 1692 *ET SEQ.* (All Defendants and Co-Defendants)

Plaintiff repeats, realleges and incorporates by reference each of the paragraphs contained in this pleading as if fully set forth herein.

126. Section 1692e of the FDCPA, prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

127. Section 1692e(9) prohibits written communications which ...create a false impression as to its source, authorization or approval

128. Section 1692e(2)(A) prohibits the false representation of . . . the character, amount, or legal status of any debt

129. Section 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer

130. Section 1692e(3) prohibits the false representation or implication that any individual is an attorney or that any communication is from an attorney.

131. Section 1692(a) prohibits unfair or deceptive acts or practice

132. Section 1692c prohibits a debt collector from communicated directly with a consumer when the consumer is represented by counsel

133. Section § 1692d prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

134. Section 1692f prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt.

135. Defendants attempted to coerce Ms. Michaels to pay the debt via the letter sent by Dominion even though Ms. Michaels was represented by counsel and engaged in the NCSLT litigation

136. In numerous instances, through the NCSLT litigation and in connection with the collection of alleged debt, Defendants and Co-Defendants, directly or indirectly, have used false, deceptive, or misleading representations or means in an unlawful attempt to collect an alleged debt.

137. Defendants' and MRA's representations as set forth in the affidavits filed in the NCSLT litigation constitute false, deceptive, or misleading representations or means, in violation of Section § 1692e.

138. Defendants and MRA's unauthorized practice of law violates § 1692e

139. Defendants represented, directly or indirectly, expressly or by implication, that the Ms. Michaels owed the claimed amount in the Amended Complaint.

140. In numerous instances Defendants did not have a reasonable basis for the representations at the time the representations were made.

141. Defendants and MRA did not have a reasonable basis for initiating the NCSLT litigation

142. The representations in the affidavits and in the alleged supporting documents filed in the NCSLT litigation constitute false, deceptive and misleading communications in violation of the FDCPA

143. Dominion violated §1692c by communicating with Ms. Michaels regarding the alleged debt when Ms. Michaels was represented by counsel and engaged in the NCSLT litigation

144. Dominion's dunning letter identifies the "Creditor" as "National Collegiate Trust" and the amount owed as $26,094.02

145. Defendants and MRA identify the Creditor in its Complaint and Amended Complaint as "National Collegiate Student Loan Trust 2007-4" and the amount owed as $23,597.16.

146. Defendants and MRA also unlawfully sought attorney fees in the Amended Complaint and the Complaint

147. As a result of the above violations of the FDCPA, the Defendants and Co-Defendants are liable to the Plaintiff for declaratory judgment that defendants' conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, and costs and attorney fees.

V

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF THE DISTRICT OF COLUMBIA DEBT COLLECTION LAW
### D.C. Code § 28-3814, *et seq* (All Defendants and Co-Defendants)

Plaintiff repeats, realleges and incorporates by reference each of the paragraphs contained in this pleading as if fully set forth herein.

148. D.C. Code § 28-3814(f) prohibits creditors or debt collectors from using any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect a debt

149. D.C. Code § 28-3814(g) prohibits a creditor or debt collector from using unfair or unconscionable means to collect or attempt to collect any debt

150. D.C. Code § 28-3814(i) prohibits a creditor or debt collector from taking or accept for assignment any debt upon which suit has been filed

151.  D.C. Code § 28-3814(f)(1) prohibits a creditor or debt collector from using any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers by the "use of any company name, while engaged in debt collection, other than the creditor or debt collector's true company name"

152.  D.C. Code § 28-3814(f)(8) provides that no creditor or debt collector shall represent that an existing obligation of the consumer may be increased by the addition of attorney's fees….or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation; and

153.  D.C. Code § 28-3814 (g)(4) provides that no creditor or debt collector shall collect or attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless such interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the consumer or unless such interest or incidental fee, charge, or expense is expressly authorized by law

154.  D.C. Code § 28-3814 (g)(5) provides that no creditor or debt collector shall communicate with a consumer whenever it appears that the consumer has notified the creditor that he is represented by an attorney and the attorney's name and address are known.

155.  Defendants and MRA attempted to illegally collect a debt alleged owed to NCSLT and had no reasonable basis for filing the NCSLT action

156.  Defendants attempted to collect a debt in a name other than their true company name

157.  Defendants and Co-defendants failed to clearly disclose to whom the debt is owed

158.  Defendants and Co-defendants misrepresented the character, extent, amount and status in a legal proceeding

159.  Defendants misrepresented themselves as the Plaintiff in the NCSLT litigation

160. Defendants misrepresented that they were authorized to bring suit in the NCSLT litigation

161. Defendants misrepresented that they were authorized to practice law before the courts of the District of Columbia

162. Defendants misrepresented that they were authorized to collect attorney fees Defendants misrepresented the true nature of the services rendered by their companies

163. Defendants communicated with Ms. Michaels when that Ms. Michaels was represented by counsel

164. MRA misrepresented that they were authorized to bring suit in the NCSLT litigation

165. MRA failed to clearly disclose to whom the debt is owed in the NCSLT litigation

166. MRA attempted to illegally collect a debt alleged owed to NCSLT and had no reasonable basis for filing the NCSLT action

167. MRA filed deceptive documents in the NCSLT litigation

168. MRA failed to conduct any reasonable review of the alleged claim prior to filing the NCSLT action

169. Dominion communicated directly with Ms. Michaels when Ms. Michaels was represented by counsel

170. Dominion accepted the assignment for collection of the alleged debt even though Ms. Michaels was involved in litigation concerning the same alleged debt without attempting to contact counsel for Ms. Michaels prior thereto

171. Dominion misrepresented the character, extent, amount and status of the alleged debt in a legal proceeding

172.  As a result of the above violations of the DCDCL, the Defendants and Co-Defendants are liable to Ms. Michaels for actual damages, statutory damages, punitive damages, costs and attorney fees.

## VI

## THIRD CLAIM FOR RELIEF

## VIOLATIONS OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION AND PROCEDURES ACT, D.C. Code § 28-3901, *et seq.* (All Defendants and Co-Defendants)

Plaintiff repeats, realleges and incorporates by reference each of the paragraphs contained in this pleading as if fully set forth herein.

173.  Defendants and MRA engaged in deceptive acts and practices in the conduct in commerce or trade by engaging in unfair and deceptive debt collection and litigation activities in violation of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 et seq.

174.  Defendants and Co-Defendants are merchants within the CPPA

175.  Defendants and Co-Defendants provided information about the alleged debt to Ms. Michaels in the NCSLT litigation and in dunning letters sent to Ms. Michaels.

176.  Upon information and belief, Defendants and Co-Defendants represent that they were assigned the alleged debt in the NCSLT litigation

177.  D.C. Code § 28-3904 prohibits multiple unlawful trade practices in the District of Columbia

   (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

   (b) represent that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have;

   (e) misrepresent as to a material fact which has a tendency to mislead;

(e-1) [r]epresent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(f) fail to state a material fact if such failure tends to mislead;

(f-1) [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead;

178. Defendants' acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

179. The acts and practices alleged under the DCDCL also constitute unfair or deceptive acts or practices in violation of D.C. Code § 28-3904 including communicating with a consumer it knows is represented by counsel

180. Defendants and MRA represented, directly or indirectly, expressly or by implication, that the Ms. Michaels owed NCSLT the alleged debt.

181. Defendants and MRA did not have a reasonable basis for the representations at the time the representations were made.

182. The making of the representations in the NCSLT litigation constitutes deceptive acts or practices in violation of the CPPA

183. Defendants and Co-Defendants misrepresented material facts that have a tendency to mislead in violation of D.C. Code § 28-3904(e), including:

   a. representing that Bradley Luke and Jonathan Boyd had personal knowledge of the allegations in the Complaint and the Amended Complaint.
   b. initiating the NCSLT litigation without a reasonable basis.
   c. filing deceptive documents in the NCSLT litigation
   d. that Defendants and MRA were entitled to collect attorneys fees
   e. that Defendants were entitled to collect interest;
   f. the amount of the alleged debt
   g. engaging in the unauthorized practice of law
   h. the interest rate applicable to the alleged debt.
   i. that the name of the "Creditor" is "National Collegiate Trust"

184. Defendants and MRA also failed to disclose material facts which have a tendency to mislead in violation of D.C. Code § 28-3904(f), including:

      a. that Defendants are not the servicer for NCSLT
      b. that neither Defendants nor MRA is authorized to bring suit on behalf of NCSLT
      c. that Defendants and MRA initiated the NCSLT litigation on their own behalf
      d. that Defendants lacked personal knowledge regarding as to the validity of the claim
      that is the subject of the NCSLT litigation

185. On information and belief, Defendants and MRA violated D.C. Code § 28-3904(s) by passing off services as those of another in that it initiated the NCSLT litigation purportedly on behalf of NCSLT but in fact initiated it on its own behalf.

186. Defendants and MRA engaged in unfair trade practices in connection with attempting to collect an alleged debt through a collection lawsuit against Ms. Michaels in the Superior Court when it had so reasonable basis for a claim and failed to allege in its Amended Complaint that the amount was in fact owed to NCSLT

187. As a result of these unfair trade practices, Defendant attempted to collect the alleged debt by obtaining an unlawful default judgment or coerce Ms. Michaels into settlement that would provide Defendants and MRA with rights and relief to which neither was entitled.

188. As a result of the foregoing violations of the DCCPPA, Defendants and Co-Defendants are liable to the Ms. Michaels for declaratory and injunctive relief prohibiting their unlawful trade practices, actual damages, statutory damages, punitive damages, costs and attorney fees

## VII

## FOURTH CLAIM FOR RELIEF

## ABUSE OF PROCESS (NCO, Transworld and MRA)

Plaintiff repeats, realleges and incorporates by reference each of the paragraphs contained in this pleading as if fully set forth herein.

188.  Defendants and MRA instituted a lawsuit on behalf of an alleged client in order to coerce Ms. Michaels to pay an alleged debt that they were not owed

189.  In the operative Amended Complaint Defendants never alleged that Ms. Michaels owed funds to NCSLT 2007-4 nor did Defendants allege that NCSLT 2007-4 was the real party in interest.

190.  In the operative Amended Complaint MRA never alleged that Ms. Michaels owed funds to NCSLT 2007-4 nor did Defendants allege that NCSLT 2007-4 was the real party in interest

191.  Defendants simply alleged that it "sues [Ms. Michaels] for the principal balance"

192.  Upon information and belief, Defendants and MRA knowingly filed false and deceptive documents in the NCSLT litigation in an effort to illegally obtain a judgment or settlement

193.  Defendants voluntarily dismissed the action with prejudice

194.  Defendants used the lawsuit to harass and oppress Ms. Michaels

195.  Defendants and MRA used the lawsuit as leverage, i.e. coercion, in an attempt to unlawfully collect the alleged unsubstantiated debt that they were not owed

196.  Defendants and MRA excessively prolonged the lawsuit by submitting deceptive documents in the NCSLT litigation in order to collect an alleged debt they knew they were not owed

197.  Defendants and MRA engaged in the unauthorized practice of law in connection with eth NCSLT litigation

198.  Defendants knowingly engaged in an illegal and improper use of process

199.  As a result of the foregoing violations of Defendants and MRA are liable to Ms. Michaels for actual damages, statutory damages, punitive damages, costs and attorney fees.

# VIII

## FIFTH CLAIM FOR RELIEF

## MALICIOUS PROSECUTION (NCO, Transworld and MRA)

Plaintiff repeats, realleges and incorporates by reference each of the paragraphs contained in this pleading as if fully set forth herein.

200.  Defendants and MRA instituted and/or prosecuted the NCSLT litigation against Ms. Michaels

201.  There was no probable cause for Defendants' prosecution of the legal proceedings against Ms. Michaels.

202.  Defendants initiation of the NCSLT litigation against Ms. Michaels was done with malice, and/or an improper motive.

203.  Defendants and MRA exploited the legal proceedings to wrongfully obtain a default judgment against Ms. Michaels that it was not legally entitled to receive.

204.  Defendants and MRA dismissed the NCSLT litigation with prejudice and as such the proceedings terminated in favor of Ms. Michaels

205.  Upon information and belief, Defendants and MRA were not authorized to prosecute the NCSLT litigation

206.  Ms. Michaels suffered physical injuries to where she had to be driven to urgent care due the stress and anxiety she experienced during the 19 month litigation where Defendants or MRA could not and would not allege that the claimed amount in the NCSLT litigation was actually owed to NCSLT

207.  Ms. Michaels suffered damages as a consequence of Defendants' and MRA's malicious prosecution of the illegal action

208. As a result of the foregoing violations of Defendants and MRA are liable to

Ms. Michaels for actual damages, statutory damages, punitive damages, costs and attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

      a)    An order enjoining all Defendants and Co-Defendants from continuing to engage in the unfair and deceptive practices described above; and

      b)    Actual and statutory damages, attorneys' fees and costs under FDCPA, the DCCPPA and the DCDCL, including costs and attorney fees associated with the underlying litigation; and

      c)    Statutory treble damages, attorneys' fees and costs under DCCPPA; and

      d)    Actual and punitive damages under the DCDCL; and

      e)    Actual damages, punitive damages, attorneys' fees and costs against NCO, MRA and Transworld Systems, Inc. for abuse of process and malicious prosecution including costs and attorney fees associated with the underlying litigation; and

      f) Such other relief at law or equity as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.

DATE: June 27, 2016          Respectfully Submitted,

                        CONSUMER JUSTICE ESQ

                        /s/RDennis

Counsel for Plaintiff, SHARON MICHAELS
CONSUMER JUSTICE ESQ
Radi Dennis, DC Bar#473921
P.O. Box 57417
Washington, DC 20037
rdennis@consumerjusticeesq.com
Telephone: (202) 579-1243
Facsimile: (202) 644-5228