## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SHARON MICHAELS,**

**Plaintiff,**

v.                                                          **Civil Action No. 16-01339 (TFH)**

**NCO FINANCIAL SYSTEMS, INC.,** *et al.,*

**Defendants.**

## <u>MEMORANDUM OPINION</u>

Plaintiff Sharon Michaels filed her Complaint in this action on June 27, 2016 against

NCO Financial Systems, Inc. ("NCO"), Transworld Systems, Inc. ("TSI"), Mitchell Rubenstein

& Associates ("MRA"), and Dominion Law Associates, PLLC ("Dominion") alleging that each

defendant violated the Fair Debt Collection Practices Act, the District of Columbia Debt

Collection Law, and the District of Columbia Consumer Protection Procedures Act through their

involvement in a student loan debt collection lawsuit filed against Michaels in the Superior Court

for the District of Columbia.  *See* Complaint [ECF No. 1].  Michaels also alleges that NCO, TSI,

and MRA committed common law abuse of process and malicious prosecution.  *Id.*

Following a lengthy and contentious discovery period, the parties filed the following

cross-motions for summary judgment: (1) Defendants NCO Financial Systems, Inc.'s and

Transworld Systems, Inc.'s Motion for Summary Judgment [ECF No. 47]; (2) Defendant

Mitchell Rubenstein & Associates, P.C.'s Motion for Summary Judgment [ECF No. 48];

(3) Plaintiff's Motion for Partial Summary Judgment for Liability Against Transworld Systems,

Inc. and NCO Financial Systems, Inc. [ECF No. 52]; and (4) Plaintiff's Motion for Partial

Summary Judgment for Liability Against Mitchell Rubenstein & Associates, P.C. [ECF No. 53].[1]

Upon consideration of the briefing, the relevant legal authorities, and the entire record herein, and for the reasons stated below, the Court grants Defendants NCO Financial Systems, Inc.'s and Transworld Systems, Inc.'s Motion for Summary Judgment [ECF No. 47] and Defendant Mitchell Rubenstein & Associates, P.C.'s Motion for Summary Judgment [ECF No. 48], and denies Plaintiff's Motion for Partial Summary Judgment for Liability Against Transworld Systems, Inc. and NCO Financial Systems, Inc. [ECF No. 52] and Plaintiff's Motion for Partial Summary Judgment for Liability Against Mitchell Rubenstein & Associates, P.C. [ECF No. 53].

## I.    BACKGROUND

In August 2007, Michaels took out a private undergraduate student loan from JPMorgan Chase Bank, N.A. ("Chase") in the amount of $16,000 to attend Southern Adventist University. MRA's Stmt. ¶ 1 [ECF No. 48-1]; *see also* Loan Agreement and Promissory Note [ECF No. 46-2 at 296-300].  On September 20, 2007, the loan was assigned, transferred, and sold from Chase to The National Collegiate Funding, LLC, and then to the National Collegiate Student Loan Trust 2007-4 ("NCSLT 2007-4").  NCO/TSI's Stmt. ¶¶ 5-6 [ECF No. 47-3]; *see* Luke Aff. ¶¶ 8-9 [ECF No. 46-2 at 292-295]; Ex. A to Luke Aff. (Pool Supplement) [ECF No. 46-2 at 301-306]; Ex. B to Luke Aff. (Deposit and Sale Agreement) [ECF No. 46-2 at 307-316].  In 2012, U.S. Bank National Association ("U.S. Bank") became the Successor Special Servicer for NCSLT

---

[1]    Michaels did not file a motion for summary judgment with respect to her claims against Dominion.  Accordingly, although Dominion is still a defendant in this case, the Court's collective references to "the defendants" herein refer only to NCO, TSI, and MRA.

2007-4 and appointed NCO as one if its subservicers to perform collection and enforcement services.  NCO/TSI's Stmt. ¶¶ 7-8; *see* Third Am. to Default Prevention and Collection Services Agmt. [ECF No. 46-2 at 161-190]; Sept. 7, 2012 Letter [ECF No. 46-2 at 330-335].  One of NCO's duties as a subservicer was to place defaulted loan accounts with law firms for collection. NCO/TSI's Stmt. ¶ 9; Third Am. to Default Prevention and Collection Services § 2.7(h) [ECF No. 46-2 at 167] ("NCO shall administer, manage and oversee collection litigation consistent with the terms of this Agreement . . .").  NCO also served as the Custodian of Records for NCSLT 2007-4.  NCO/TSI's Stmt. ¶ 9; Third Am. to Default Prevention and Collection Services § 2.7(i) [ECF No. 46-2 at 167] ("The Special Servicer shall execute and deliver to NCO one or more powers of attorney appointing NCO as the . . . custodian of records for the Special Servicer. . . .").

In June 2013, NCO placed Michaels's defaulted student loan account with MRA for collection and evaluation for litigation.  MRA's Stmt. ¶ 2 [ECF No. 48-1].  On March 7, 2014, MRA, on behalf of NCSLT 2007-4, filed suit against Michaels in the Superior Court for the District of Columbia (the "Superior Court litigation").  *Id.*; NCO/TSI's Stmt. ¶ 15; Michaels's Stmt. ¶ 1 [ECF No. 53-1]; *see also* Debt Collection Compl. [ECF No. 48-4]; Collection Action Docket [ECF No. 48-10].  The Complaint sought judgment for $22,602.95, the principal sum due on the loan, plus accrued interest, post-judgment interest, costs, and attorneys' fees.  MRA's Stmt. ¶ 6; Debt Collection Compl. [ECF No. 48-4].  On May 20, 2014, MRA filed an amended complaint on behalf of NCSLT 2007-4 to waive its previously asserted entitlement to post-judgment interest.  *Id.* ¶ 8; *see* Collection Action Docket [ECF No. 48-10]; Am. Debt Collection Compl. [ECF No. 48-9].  Michaels was served with the Amended Complaint on June 15, 2014. *See* Collection Action Docket (entry dated 06/19/2014 referencing Proof of Service).  Michaels

responded to the Amended Complaint on July 7, 2014, filing a Motion for More Definite Statement and Motion to Dismiss. *See* ECF No. 48-11. The Superior Court denied Michaels's Motion for More Definite Statement and denied her Motion to Dismiss without prejudice on October 24, 2014. *Id.*

In 2014, TSI replaced NCO as U.S. Bank's subservicer and records custodian for NCSLT 2007-4. NCO/TSI Stmt. ¶ 29; Nov. 3, 2014 Ltr. [ECF No. 46-2 at 5]; *see also* Fifth Am. to Default Prevention and Collection Services ("Successor Special Servicer consented to the assignment of NCO's rights, obligations and duties under the Agreement to TSI . . .") [ECF No. 46-2 at 41]. On December 29, 2014, NCSLT 2007-4 filed a Motion for Summary Judgment, and Michaels filed a Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Rule 37(b) Sanctions for Attorney Fees and Costs. *See* Collection Action Docket; *see also* ECF Nos. 48-17 & 48-12.[2] The Superior Court denied both parties' cross-motions from the bench at a hearing on May 14, 2015. *Id.*

On April 6, 2015, Attorney Duane Demers filed a Motion to Withdraw as Counsel for NCSLT 2007-4. *See* Collection Action Docket [ECF No. 48-10]. MRA, through Attorney Duane Demers, made its last appearance on behalf of NCSLT 2007-4 in the Superior Court litigation on May 14, 2015. *Id.* Darragh L. Inman filed a Praecipe to Substitute Appearance as counsel for NCSLT 2007-4 on May 19, 2015, and the Superior Court formally granted Mr. Demers's Motion to Withdraw as Counsel at the next status hearing on July 9, 2015.[3] *Id.*

---

[2]     On March 16, 2015, NCSLT 2007-4 supplemented its Motion for Summary Judgment by filing an Affidavit and Verification of Account of Bradley Luke on behalf of TSI. *See* Ex. O to Pl.'s Mot. for Partial Summ. J. [ECF No. 53-2 at 395-432].

[3]     Mr. Demers was not present at the July 9, 2015 status hearing. Only Mr. Inman appeared on that date on behalf of NCSLT 2007-4. *See* Collection Action Docket.

Following an unsuccessful mediation on October 20, 2015, the Superior Court reopened

discovery for 60 days upon Michaels's request.  *See* Collection Action Docket.  Soon thereafter,

on November 27, 2015, Michaels and NCSLT 2007-4 jointly filed a Stipulated Dismissal with

Prejudice pursuant to D.C. Superior Court Rule of Civil Procedure 41(a)(1)(A)(ii).  *See*

Collection Action Docket (noting on November 30, 2015 that the case was "Dismissed by

Consent").  This lawsuit followed seven months later.[4]

## II.     SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 mandates that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it

"might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).  A dispute over a material fact is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Id.*  At the summary judgment

stage, however, "the judge's function is not himself to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for

a jury to return a verdict for that party."  *Id.*  With respect to cross-motions for summary

---

[4]     The background is summarized here to provide context for the underlying Superior Court litigation that forms the basis for Michaels's claims in this lawsuit.  Although Michaels disputes or denies nearly every fact asserted by MRA and NCO/TSI as they relate to the assignment and servicing of the loan she received from Chase, she does not properly support her denials with specific facts or citations to the record establishing that she is entitled to judgment, or that there is a genuine issue for trial.  S*ee, e.g.,* Plaintiff Sharon Michaels' Statement of Genuine Issues for Trial [ECF No. 61-1 at 38-56]; Plaintiff Sharon Michaels' Statement of Genuine Issues for Trial [ECF No. 60-1 at 31-56].  Importantly, however, the Court's decisions in this Memorandum Opinion do not hinge on any of the background facts related to the assignment and servicing of Michaels's loan.

judgment, "neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Vaughan v. Amtrak,* 892 F. Supp. 2d 84, 91 (D.D.C. 2012) (quoting *Sherwood v. Washington Post,* 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989)).

Although "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party," *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted," *Anderson*, 477 U.S. at 249 (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Accordingly, "[c]onclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment." *Boone v. MountainMade Found.*, 64 F. Supp. 3d 216, 224 (D.D.C. 2014) (citing *Ass'n of Flight Attendants–CWA, AFL–CIO v. U.S. Dep't of Transp.,* 564 F.3d 462, 465–66 (D.C. Cir. 2009)).

The evidence the Court may consider when ruling on a summary judgment motion consists of "materials specified in Federal Rule of Civil Procedure 56(c) as well as any material that would be admissible or usable at trial." *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 145 (D.C. Cir. 2011) (internal quotation marks omitted). Pursuant to Rule 56(c), the Court

is not limited to the evidence cited by the parties but also "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  In addition, the Rules of the United States District Court for the District of Columbia state that "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 7(h)(1).

### III.    ANALYSIS

#### A.    Fair Debt Collection Practices Act

Congress enacted the Fair Debt Collection Practices Act ("FDCPA") in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  The FDCPA prohibits debt collectors from using, *inter alia*, "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or any "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f.  Debt collectors that engage in these prohibited practices are subject to civil liability for actual damages, statutory damages, and reasonable attorney's fees and costs.  15 U.S.C. § 1692k(a).

To prevail on a claim under the FDCPA, a plaintiff must establish that: "(1) the defendant is a debt collector; (2) who took action 'in connection with the collection of any debt'; and (3) the action violated the substantive proscriptions in the Act."  *Lipscomb v. The Raddatz Law Firm, P.L.L.C.*, 109 F. Supp. 3d 251, 256 (D.D.C. 2015) (citing *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 384 (7th Cir. 2010); *Muldrow v. EMC Mortg. Corp.,* 657 F. Supp. 2d 171,

174–75 (D.D.C. 2009)).  The statute of limitations for FDCPA claims is one year.  15 U.S.C.

§ 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any

appropriate United States district court . . . within one year from the date on which the violation

occurs.").

Here, Michaels argues that "MRA violated the FDCPA . . . by filing a debt collection

lawsuit against [her] that was barred by the statute of limitations" and by making "multiple false

representations" in the Superior Court litigation.  Pl.'s Mot. for Partial Summ. J. as to MRA at

12, 13 [ECF No. 53].  The basis of Michaels's FDCPA claims against NCO and TSI are

somewhat more opaque, but it appears that she alleges NCO and TSI "falsely implie[d] legal

recourse to collect the alleged debt by filing an action that [wa]s time barred and in the name of a

false plaintiff," Pl.'s Mot. for Partial Summ. J. as to NCO/TSI at 14 [ECF No. 52], and that TSI,

through Dominion Law Associates, illegally communicated directly with her during the Superior

Court litigation, *id.*  All of Michaels's FDCPA allegations appear to rest on her general claims

that (1) the Superior Court litigation was barred by the statute of limitations, (2) NCSLT 2007-4

was not the real party in interest; and (3) NCO and TSI did not have the authority to hire MRA

(and later, Dominion) to file and maintain the lawsuit on behalf of NCSLT 2007-4.

The Court must first determine whether Michaels's FDCPA claims are time barred.  "In

cases . . . where the FDCPA claim is premised on the wrongful filing of a debt collection action,

federal appellate courts generally have held that the claim accrues when the debtor is served with

the complaint, as that is the date when the debtor receives notice of the action."  *Quick v.

EduCap, Inc.*, 318 F. Supp. 3d 121, 143 (D.D.C. 2018) (citing *Lyons v. Michael & Assocs.*, 824

F.3d 1169, 1171-72 (9th Cir. 2016); *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d

440, 446-48 (5th Cir. 2013)).  Michaels was served with the Amended Debt Collection

Complaint on June 15, 2014.  *See* Collection Action Docket (entry dated 06/19/2014 referencing Proof of Service); *see also id.* (entry dated 10/24/2014 noting that "[Michael]'s counsel states that her client was not served with the original complaint, only the amended complaint.").  There is no dispute that Michaels did not file this action within one year of service of the Amended Debt Collection Complaint, so unless Michaels can establish that her claims accrued at a later date or that there is a basis for tolling the statute of limitations, her FDCPA claims are time barred.

Michaels first argues that her FDCPA claims are timely by operation of either the discovery rule or equitable tolling.  Pl.'s Corrected Resp. 4 [ECF No. 103] ("[U]nder the tolling doctrines the [statute of limitations] does not begin to run until Plaintiff could have reasonably discovered the event giving rise to the claim.").  Earlier this year, the Supreme Court held that the FDCPA's statute of limitations is not subject to the discovery rule.  *Rotkiskie v. Klemm*, 140 S.Ct. 355, 357 (2020) ("We hold that, absent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered.").  The general discovery rule, however, is distinct from equitable tolling: fraudulent concealment is an "equitable doctrine [that] is read into every federal statute of limitations," operating to equitably toll the statute of limitations.  *Holmberg v. Armbrecht*, 327 U.S. 392, 391 (1946).  Michaels argues that "NCO, TSI and MRA acting in concert fraudulently and intentionally concealed their roles in the NCSLT suit and NCO's and TSI's lack of capacity to initiate and manage the NCSLT suit. . . ," Pl.'s Opp'n to NCO/TSI's Mot. for Summ. J. 9 [ECF No. 60-1]), and contends that the statute of limitations on her FDCPA claims began to run only when the Superior Court litigation was dismissed with prejudice, *id.* at 8, 9.

To establish fraudulent concealment and toll the statute of limitations, "a plaintiff must show that the defendant engaged in conduct designed to conceal evidence of their wrongdoing, and that the plaintiff lacked actual or constructive notice of that evidence, despite exercising diligence." *Quick*, 318 F. Supp. 3d at 143 (citing *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)). "Generally, fraudulent concealment requires that the defendant make an affirmative misrepresentation tending to prevent discovery of the wrongdoing." *Id.* Aside from a litany of conclusory statements not supported by citations to the record, Michaels has failed to identify any affirmative misrepresentation made by MRA, NCO, or TSI that prevented her from discovering the FDCPA violations she alleges. In fact, Michaels argued that the Superior Court litigation was time-barred, and challenged the roles of NCO, TSI, and MRA on multiple occasions during the pendency of that litigation, *see* Mot. for More Definite Statement and Mot. to Dismiss [ECF No. 48-11]; Renewed Mot. to Dismiss [ECF No. 48-12], so it strains credulity to argue that she was somehow prevented from discovering such conduct until the lawsuit was dismissed.[5] Equitable tolling simply does not apply here.

---

[5]     Michaels also misconstrues the operation and effect of a stipulated voluntary dismissal with prejudice under D.C. Superior Court Rule of Civil Procedure 41(a)(1)(A)(ii). *See* Pl.'s Corrected Resp. 3-4 [ECF No. 103]. In essence, Michaels argues that all of the arguments she raised in the Superior Court litigation were resolved in her favor when the case was voluntarily dismissed with prejudice, and that res judicata bars the defendants in this litigation from "relitigating" the merits of those arguments. *See id.* at 3 ("the time-barred and real party in interest/standing questions were raised and litigated by TSI through MRA in the NCSLT suit and Ms. Michaels is the prevailing party."). Not so. The voluntary dismissal of the Superior Court litigation operates as res judicata only insofar as it relates to the claim asserted against Michaels in that case for recovery of the balance on her student loan account. The parties' stipulated dismissal in the Superior Court litigation plainly does not operate as an admission of liability by the defendants as to the claims asserted by Michaels in this litigation. The merits of the claims in this case – which was not even filed until seven months *after* the Superior Court litigation was dismissed – were in no way adjudicated by the Superior Court, and the parties' stipulated dismissal does not have the preclusive effect asserted by Michaels.

Michaels also argues that the "continuing violation" doctrine applies to her FDCPA claims such that her claims did not accrue until the Superior Court litigation was dismissed with prejudice.  Pl.'s Opp'n to NCO/TSI's Mot. for Summ. J. at 10.  Although the D.C. Circuit has not decided the issue, "[n]o court of appeals has held that debt-collection litigation (or a misleading statement made in connection with that litigation) is a continuing violation of the FDCPA." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257–58 (6th Cir. 2014) (citing *Schaffhauser v. Citibank (S.D.) N.A.,* 340 F. App'x 128, 131 (3d Cir. 2009) (per curiam) (holding that ongoing debt-collection litigation does not constitute a continuing violation of the FDCPA); *Naas v. Stolman,* 130 F.3d 892, 893 (9th Cir. 1997) (stating that the FDCPA's statute of limitations begins to run when the debt-collection suit is filed rather than when the trial court issues its judgment)).  *See also Leonardo v. MSW Capital, LLC*, No. 16-cv-3845, 2017 WL 2062852, at *2 (D. Minn. May 12, 2017) ("When an FDCPA claim involves misrepresentations in a debt-collection lawsuit, a new violation is not committed merely because pleadings and memoranda are the continuing effects of the initial violation. . . .  The plaintiff is not deceived or abused anew each time the defendants reaffirm their deceptive statements throughout the litigation.").  All of Michaels's FDCPA claims stem from the Superior Court litigation, and the statute of limitations accrued in June 2014 when she was served with the Amended Debt Collection Complaint.

Although courts have recognized that it is possible that "collection activity within or related to pending litigation may lead to new, and separately prosecutable, violations of the FDCPA," the continuing violation doctrine does not operate to resurrect prior untimely claims. *Gajewski v. Ocwen Loan Servicing*, 650 F. App'x 283, 286 (7th Cir. 2016).  Therefore, even assuming that the defendants engaged in conduct during the pendency of the Superior Court

litigation that could have led to new, separately prosecutable violations of the FDCPA, any

claims based on conduct occurring before June 2015 – a year before Michaels filed this federal

lawsuit – would clearly be barred by the one year statute of limitations.

None of the defendants engaged in relevant conduct after May 2015.  NCO took no

action with respect to Michaels's loan account or the Superior Court litigation after 2014, when

TSI assumed NCO's rights, obligations, and duties as subservicer and records custodian for

NCSLT 2007-4.  As to TSI, its last representations regarding Michaels's loan and its

responsibilities as records custodian and subservicer for NCSLT 2007-4 were contained in the

Affidavit of Bradley Luke, which was filed in the Superior Court litigation on March 16, 2015.[6]

Finally, MRA made its last appearance on behalf of NCSLT 2007-4 in the Superior Court

litigation on May 14, 2015, and new counsel for NCSLT 2007-4 filed his Praecipe to Substitute

Appearance on May 19, 2015.  Given this timeline, no FDCPA claim against the defendants

could be timely.  The defendants are therefore entitled to summary judgment on Michaels's

FDCPA claims.

---

[6]     Michaels also argues that TSI violated the FDCPA by "communicat[ing] directly with [her] during the [Superior Court] litigation through Dominion and while she was represented by counsel."  Pl.'s Mot. for Partial Summ. J. as to NCO/TSI at 14 [ECF No. 52].  The record reflects that Dominion Law Associates sent a letter to Michaels dated June 29, 2015 regarding her loan account.  *See* ECF No. 52-2 at 193.  But Michaels does not provide any support for her claim that TSI is vicariously liable for Dominion's actions *under* the FDCPA.  Although the Complaint alleges that "Dominion violated § 1692c by communicating with Ms. Michaels regarding the alleged debt when Ms. Michaels was represented by counsel and engaged in the NCSLT litigation," Compl. ¶ 143,  Michaels chose not to file a summary judgment motion with respect to her claims against Dominion, and she has not pursued further prosecution of those claims in the nearly four years that this case has been pending.  She has not provided any evidence that Dominion was acting as counsel for TSI and has not established any basis for holding TSI vicariously liable for Dominion's actions.  The fact that Dominion sent a letter to Michaels dated June 29, 2015 does not change the Court's conclusion regarding the untimeliness of Michaels's FDCPA claims against TSI.

### B.      D.C. Debt Collection Law

The D.C. Debt Collection Law ("DCDCL") prohibits a debt collector from making "any false representation or implication of the character, extent, or amount of a claim against a consumer, or of its status in any legal proceeding."  D.C. Code § 28–3814(f)(5).  Liability requires "[p]roof, by substantial evidence, that a creditor or debt collector has *willfully* violated" a provision of the statute.  *Id.* § 28–3814(j)(1) (emphasis added).  Michaels claims that MRA willfully violated the DCDCL by (1) misrepresenting the name of the real party of interest in each of its filings; (2) attempting to collect a debt in a name other than the true plaintiff; (3) misrepresenting the name of the alleged creditor; (4) misrepresenting the character, extent, amount, and status of the debt by filing an out-of-statute claim and swearing to the accuracy of an interest rate that was higher than the one identified in the loan documents; (5) attempting to collect interest not authorized by law; and (6) unlawfully requesting attorneys' fees.  Pl.'s Mot. for Partial Summ. J. as to MRA at 20 [ECF No. 53-1].  Michaels asserts the same violations of the DCDCL by NCO and TSI, and additionally claims that TSI willfully violated the statute by communicating directly with her via the letter from Dominion after knowing she was represented by counsel.  Pl.'s Mot. for Partial Summ. J. as to NCO/TSI at 20 [ECF No. 52-1].  Michaels's DCDCL claims, however, are largely unsupported by citations to the record, and beyond broad conclusory statements she offers no explanation of how the defendants' conduct violated the DCDCL.[7]

---

[7]      Michaels again seeks to impose vicarious liability on TSI for the letter she received from Dominion in June 2015, alleging that TSI committed a willful violation of § 28-3814(g)(5) of the DCDCL by contacting her directly and not through her counsel.  Pl.'s Mot. for Partial Summ. J. as to NCO/TSI at 20.  As explained above in footnote 6, the record is devoid of any evidence that

In 2016, Judge Amy Berman Jackson decided a case in which the plaintiff alleged that that MRA (the same defendant here) had violated the DCDCL by misrepresenting the amount of her debt and by contacting her directly instead of through counsel as required by the statute. *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 174 F. Supp. 3d 146 (D.D.C. 2016), *aff'd in part, rev'd in part, and remanded on other grounds*, 857 F.3d 939 (D.C. Cir. 2017).  Analyzing the willfulness requirement of the DCDCL, the court found that

> [t]he D.C. Code does not define the term "willfully," and neither the D.C. Circuit nor the D.C. Court of Appeals appears to have interpreted the term as it is used in the Debt Collection Law. However, the Supreme Court has provided some guidance in the context of the Fair Credit Reporting Act (FCRA), a similar consumer protection statute: "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007); *see also Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 47 n.12 (D.D.C. 2008) ("In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'") (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  The Court finds that to be the appropriate standard here, and it concludes that the record shows that defendant's conduct in this case did not meet that standard.

*Id.* at 153.  The defendant submitted a declaration from its president, Mitchell Rubenstein, who explained that his violations were unintentional, and the court rejected the plaintiff's argument that the defendant lacked the appropriate training and procedures in place to prevent such a mistake.  *Id.* at 154-55.  Pointing to the defendant's policies and procedures manual, the court found that there was no genuine dispute of material fact regarding the willfulness of MRA's actions and therefore granted summary judgment to MRA on both claims.  *Id.* at 158, 159.  The Circuit affirmed the district court's decision to grant summary judgment to the defendants on the plaintiff's DCDCL claims, noting that

---

Dominion was acting as counsel for TSI, and Michaels has not established any basis for holding TSI vicariously liable for the letter sent by Dominion.

> neither this court nor the D.C. Court of Appeals appears to have set forth the standard for determining what constitutes "willful" conduct. While we can find no fault in the District Court's decision to treat this term as embracing "not only knowing violations of [the DCDCL], but reckless ones as well," we refrain, out of deference to the D.C. Court of Appeals, from specifically adopting this standard when interpreting this statute. Instead, we note simply that no definition of willfulness advanced by any party in this litigation suggests that Appellee's conduct can be viewed as a "willful" violation of this law.

*Baylor*, 857 F.3d at 952 (internal citations omitted).

Even viewing the evidence in the light most favorable to Michaels, there is no evidence before the Court that would allow a reasonable jury to find that the defendants committed any knowing and reckless violations of the DCDCL. The defendants are therefore entitled to summary judgment on Michaels's DCDCL claims.

### C.    D.C. Consumer Protection Procedures Act

The D.C. Consumer Protection Procedures Act ("CPPA") creates an "enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia." D.C. Code § 28–3901(c).

> One of the principal goals of the CPPA is to "assure that a just mechanism exists to remedy all improper trade practices." D.C. Code § 28–3901(b)(1). To that end, it embraces both an expansive understanding of the conduct which constitutes a "trade practice"—"any act which does or would create, alter, ... make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale ... or transfer, of consumer goods or services", which are "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit ... and consumer services of all types"—and provides an extensive list of unlawful trade practices. D.C. Code § 28–3901(a)(6)–(7); *see id.* § 28–3904; *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 708 (D.C. 1981). These prohibited practices can only be committed by a merchant, an individual who "sell[s] ... or transfer[s], either directly or indirectly, consumer goods or services" or who, in the ordinary course of business, "suppl[ies] the goods or services which are or would be the subject matter of a trade practice." D.C. Code § 28–3901(a)(3); *see DeBerry v. First Gov't Mortg. & Inv'rs Corp.*, 743 A.2d 699, 701 (D.C. 1999).

*Baylor*, 857 F.3d at 947-48.

In *Baylor*, the Circuit also considered whether the district court erred in dismissing the plaintiff's CPPA claims against MRA.  *Id.* at 939.  There, MRA, acting as a debt collector, sent letters to the plaintiff that contained inconsistencies regarding the plaintiff's loans and the amounts she owed on them.  *Id.* at 942.  MRA also failed to direct all communications to the plaintiff's attorney after she had retained counsel.  *Id.*  In holding that the district court had properly dismissed the plaintiff's CPPA claims against MRA, the Circuit explained that the "CPPA applies only to consumer-merchant relationships," and "a debt collector [ ] attempting to recoup funds on behalf of a creditor who itself did not provide [plaintiff] with any credit" does not create such a relationship for purposes of the CPPA.  *Id.* at 948.  ("[I]t seems perverse to suggest that the 'consumer' of the services it provides—debt collection—is the individual from whom it is attempting to collect rather than the creditor who retained it.").

Just as in *Baylor*, the defendants here did not provide Michaels with any goods or services, and their actions did not occur in the context of a consumer-merchant relationship. Chase provided Michaels with the original loan.  The loan was then assigned, transferred, and sold from Chase to The National Collegiate Funding, LLC, and then to NCSLT 2007-4. NCO/TSI's Stmt. ¶¶ 5-6 [ECF No. 47-3]; *see* Luke Aff. ¶¶ 8-9 [ECF No. 46-2 at 292-295]; Ex. A to Luke Aff. (Pool Supplement) [ECF No. 46-2 at 301-306]; Ex. B to Luke Aff. (Deposit and Sale Agreement) [ECF No. 46-2 at 307-316].  NCO, and then TSI, were subservicers and record custodians for NCSLT 2007-4, and MRA served as counsel for NCSLT 2007-4.  Michaels was not the consumer of any services provided by NCO, TSI, or MRA.  *See also Mushala v. U.S. Bank, Nat'l Ass'n*, No. 18-1680 (JDB), 2019 WL 1429523, at *9 (D.D.C. Mar. 29, 2019) (loan servicer and bank that did not provide borrower with original loan were not subject to liability under the CPPA because they did not provide the borrower with any "goods or services" and

their "actions did not take place within the context of a consumer-merchant relationship") (citing and quoting *Baylor*, 857 F.3d at 948); *Winebarger v. Penn. Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1093-94 (C.D. Cal. 2019) ("Loan servicers . . . are not 'merchants' and, thus, are not subject to liability under the CPPA.") (citing *Mushala*, 2019 WL 1429523).

Accordingly, the Circuit has already clearly determined that the CPPA does not apply to the conduct at issue here by the defendants, and the defendants are entitled to summary judgment on Michaels's CPPA claim.

### D.  Abuse of Process

While Michaels asserts that "[t]he record is replete with evidence and law supporting [her] claim" for abuse of process, Pl.'s Revised Reply at 24 [ECF No. 79-1], she fails to cite to facts sufficient to support a finding that the defendants used the legal system to achieve an impermissible end.

As the D.C. Circuit has explained, "[t]he essence of the tort of abuse of process is the use of the legal system 'to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Scott v. D.C.*, 101 F.3d 748, 755 (D.C. Cir. 1996) (quoting *Bown v. Hamilton,* 601 A.2d 1074, 1079 (D.C. 1992)); *see also Heck v. Humphrey,* 512 U.S. 477, 486 n.5 (1994); *Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n,* 343 N.E.2d 278 (N.Y. 1975).  "[I]n addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge."  *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980); *see also Houlahan v. World Wide Ass'n of Specialty Programs and Schools*, 677 F. Supp. 2d 195, 199 (D.D.C. 2010) ("There are two essential elements to an abuse of process claim: '(1) the existence

of an ulterior motive; and (2) an *act* in the use of process other than such as would be proper in the regular prosecution of the charge.'") (quoting *Hall v. Hollywood Credit Clothing Co.,* 147 A.2d 866, 868 (D.C. 1959)).

Michaels's conclusory statements regarding the defendants' alleged ulterior motives are insufficient to create a triable issue of fact with respect to this claim.  There is no evidence that the defendants acted with an ulterior motive in filing the Superior Court litigation, and there was no "perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge."  *See Morowitz*, 423 A.2d at 198.  Accordingly, the defendants are entitled to summary judgment on Michaels's claim for abuse of process.

### E.       Malicious Prosecution

Michaels alleges that the defendants "maliciously prosecuted the [Superior Court] litigation without probable cause."  Pl.'s Mot. for Partial Summ. J. as to MRA at 23; Pl.'s Mot. for Partial Summ. J. as to NCO/TSI at 23.   "[T]o prevail in a claim of malicious prosecution, [Michaels] must plead and prove four things: (1) the underlying suit terminated in [Michaels]'s favor; (2) malice on the part of [the defendants]; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by [Michaels] as the result of the original action." *Morowitz v. Marvel*, 423 A.2d at 198 (discussing *Ammerman v. Newman*, 384 A.2d 637 (D.C. 1978)).

Again, without any citations to the record before the Court, Michaels attempts to support her claim of malicious prosecution with the same laundry list of conclusory allegations that she relies upon throughout her summary judgment briefing: (1) NCSLT was not the "proper plaintiff" in the Superior Court litigation; (2) the Superior Court litigation was time barred; (3) the relationship between NCO/TSI and NCSLT was "improper"; (4) MRA acted in "reckless

disregard" of its obligations as an attorney; and (5) MRA engaged in the unauthorized practice of law. *See* Pl.'s Opp'n to MRA Mot. for Summ. J. 30-31 [ECF No. 61-1], Pl.'s Mot. for Partial Summ. J. as to MRA at 23-26, Pl.'s Mot. for Partial Summ. J. as to NCO/TSI at 23-26, Pl.'s Opp'n to NCO/TSI Mot. for Summ. J. 21-24 [ECF No. 60-1].

Michaels's claims for malicious prosecution fail for three independent reasons: (1) she has not established malice on the part of the defendants; (2) she has not established the absence of probable cause for the underlying lawsuit; and (3) she has not established that she suffered a special injury resulting from the underlying litigation. It is of no moment that the Superior Court litigation was ultimately dismissed with prejudice pursuant to the parties' stipulation.[8]

First, the undisputed facts in this case do not establish that the defendants acted with malice toward Michaels in the Superior Court litigation. Malice is defined as "the existence of an evil purpose or motive, a wicked or mischievous intent, or a willful, wanton, reckless or oppressive disregard to the rights of the plaintiff." *Ammerman*, 384 A.2d at 640-41 (citing 52 Am. Jur. 2d Malicious Prosecution § 46 (1970)). The record establishes that Michaels obtained a student loan from Chase that was ultimately transferred to NCSLT 2007-4, that she defaulted on her loan, and that MRA filed the underlying lawsuit on behalf of NCSLT 2007-4 to collect the outstanding balance on the loan. The record is devoid of any evidence on which a reasonable jury could rely to establish that the defendants acted with "an evil purpose or motive, a wicked or

---

[8] Michaels incorrectly asserts that the arguments she raises in support of her malicious prosecution claim, which she also raised in the Superior Court litigation, "were conceded in [her] favor" when that case was dismissed with prejudice. Pl.'s Opp'n to MRA's Mot. for Summ. J. at 32 [ECF No. 61-1]. As explained above in footnote 5, the parties' Stipulated Dismissal With Prejudice did not operate as an admission or a concession of truth by the defendants as to the arguments raised by Michaels during the course of the Superior Court litigation.

mischievous intent, or a willful, wanton, reckless or oppressive disregard" to Michaels's rights.

*Id.*

Michaels has also failed to establish the absence of probable cause for the underlying

lawsuit.  The D.C. Court of Appeals has explained that

> [l]ack of probable cause is an essential element of an action for malicious prosecution, and a showing of probable cause is thus a valid defense which warrants a directed verdict for the defendant. With reference to civil actions, probable cause has been said to be such reason supported by facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper. One need not be certain of the outcome of a proceeding to have reasonable grounds for instituting it, however. Probable cause does not mean sufficient cause. According to the generally accepted view, probable cause depends not on the actual state of the case in point of fact, but upon the honest belief of the person instituting it. It may flow from a belief that turns out to be unfounded as long as it is not unreasonable.

*Ammerman*, 384 A.2d at 639–40 (internal citations omitted).  As detailed above, the defendants

had probable cause to file the underlying lawsuit against Michaels to recover the debt she owed.

*See Davis v. World Credit Fund I, LLC*, 543 F. Supp. 2d 953, 956-57 (N.D. Ill. 2008) (granting

summary judgment to defendant on claim of malicious prosecution based on finding that

defendant established probable cause to file the underlying suit where the facts "reasonably

suggest[ed] plaintiff owed the alleged debt.").

Finally, Michaels has not presented any evidence that she suffered a "special injury"

under D.C. law.  "The special injury required has been defined as arrest, seizure of property, or

'injury which would not necessarily result from suits to recover for like causes of

action.'"  *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1282 (D.C. 2002) (citing

*Mazanderan v. McGranery,* 490 A.2d 180, 182 (D.C. 1984)).  Under D.C. law, "[i]njuries to

reputation, emotional distress, loss of income, and substantial expense in defending" are outside

the scope of what constitutes a "special injury." *Id.*  Michaels argues that she meets a limited

exception to the special injury rule known as the "one suit plus" exception. *See Davis v. Boyle Bros.*, 73 A.2d 517, 520 (D.C. 1950). In *Davis*, the court recognized that a plaintiff may satisfy the special injury requirement if she is forced to defend against a lawsuit that "involves something more than the usual suit brought maliciously and without probable cause. . . ." *Id.* There, the defendant brought a lawsuit against the plaintiff, in an alternative name that she had never used, based on mistaken identity. *Id.* The defendant initially agreed to dismiss the lawsuit, but it then proceeded to request a default judgment against the plaintiff and she was forced to defend against the default judgment and a subsequent trial on the merits. *Id.* Here, there is no evidence supporting Michaels's claim of special damages in the form of "one suit plus." Not only was the Superior Court litigation not brought with malice and supported by probable cause, but it did not in any way resemble the circumstances presented in *Davis*. Michaels has not presented any evidence that she suffered a "special injury" under D.C. law.

Because Michaels has failed to present any evidence establishing malice on the part of the defendants, lack of probable cause for the underlying lawsuit, or that she has suffered a special injury, the Court finds that the defendants are entitled to summary judgment on Michaels's malicious prosecution claim.

## IV. LEAVE TO AMEND

In her oppositions to the defendants' motions for summary judgment, Michaels requests leave to amend her complaint "if the court determines that [her] pleading is in any way deficient in conforming to the claims discovered and named in the instant opposition or with the evidence obtained during discovery." Pl.'s Opp'n to MRA's Mot. for Summ. J. at 34-35; Pl.'s Opp'n to NCO/TSI's Mot. for Summ. J. at 27-28. As the D.C. Circuit has made clear, "a request for leave [to amend the complaint] must be submitted in the form of a written motion. . . ." *Belizan v.*

*Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006).  Michaels's request is not a proper motion for leave to amend her complaint under Rule 15(a) of the Federal Rules of Civil Procedure or Local Civil Rule 15.1.  In addition, "[i]t is well-established in this district that a plaintiff cannot amend h[er] Complaint in an opposition to a defendant's motion for summary judgment."  *Jo v. District of Columbia*, 582 F. Supp. 2d 51, 64 (D.D.C. 2008); *see also Trudel v. SunTrust Bank*, 288 F. Supp. 3d 239, 258 (D.D.C 2018).  Michaels's request for leave to amend is therefore improper and will be denied.

## V.  CONCLUSION

The Court has considered the remaining arguments offered by the parties and finds them to be superfluous or without merit in light of the Court's reasoning above.  Therefore, and for the reasons above, the Court grants Defendants NCO Financial Systems, Inc.'s and Transworld Systems, Inc.'s Motion for Summary Judgment [ECF No. 47] and Defendant Mitchell Rubenstein & Associates, P.C.'s Motion for Summary Judgment [ECF No. 48], and denies Plaintiff's Motion for Partial Summary Judgment for Liability Against Transworld Systems, Inc. and NCO Financial Systems, Inc. [ECF No. 52] and Plaintiff's Motion for Partial Summary Judgment for Liability Against Mitchell Rubenstein & Associates, P.C. [ECF No. 53].  An appropriate Order accompanies this Opinion.


May 29, 2020                                    _____
                                                             Thomas F. Hogan
                                                    Senior United States District Judge